UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FRED ASANTE,

23-CV-1299 (JSR) (VF)

                                        Plaintiff,

**REPORT &**
**RECOMMENDATION**

                    -against-

UNITED STATES OF AMERICA,

                                        Defendant.
-------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE JED S. RAKOFF, United States District Judge.**

On February 16, 2022, Petitioner Fred Asante ("Asante") entered a guilty plea to one

count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), in the

United States District Court for the Southern District of New York. D.E.[1] 70 at 1-2; D.E. 114 at

1.[2] On May 18, 2022, the Honorable Jed S. Rakoff sentenced Asante to a term of 108 months'

imprisonment and three years of supervised release. D.E. 114 at 2-3. Asante appealed his

conviction on June 29, 2022 (D.E. 121), and the Second Circuit granted his motion to withdraw

the appeal on October 4, 2022 (D.E. 124). On February 9, 2023, Asante, proceeding *pro se*, filed

the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. See D.E. 132; ECF

No. 1. For the reasons that follow, I respectfully recommend that the Petition be **DENIED**.

---

[1] "D.E." refers to a docket entry in Asante's underlying criminal case, No. 21-CR-88
(JSR). "ECF No." refers to an entry in the docket for Asante's instant Section 2255 habeas
proceeding, No. 23-CV-1299.

[2] The page numbers referenced herein for citations to the electronic docket are to the
electronically generated pagination in those documents.

**FACTUAL BACKGROUND**

**A. Underlying Offense**

On February 10, 2021, the government filed a sealed Indictment whereby Asante and three co-defendants, Farouk Appiedu, Celvin Freeman, and Lord Aning, were charged by a grand jury with five counts: (1) conspiracy to commit wire fraud, (2) wire fraud, (3) money laundering conspiracy, (4) conspiracy to receive stolen money, and (5) receipt of stolen money. D.E. 2 at 1, 7-9, 11. The charges stemmed from allegations that Asante, Appiedu, Freeman, and Aning had engaged in a series of frauds against individuals and businesses located across the United States and in this District, including "business email compromises, romance scams, and fraud schemes related to the novel coronavirus/COVID-19 pandemic." Id. at 1.

Asante was arrested in the Eastern District of Virginia on February 19, 2021. ECF No. 12 at 4. He was originally represented by Robert Bryan, Esq. See id.; D.E. 24 at 1. Bryan withdrew as Asante's counsel on December 8, 2021 (see D.E. 63), and César de Castro, Esq. was appointed as counsel for Asante on December 10, 2021 (D.E. 65).

On February 16, 2022, Asante entered a plea of guilty to Count Three of the Indictment, which charged him with "conspiracy to commit money laundering from at least in or about 2013 through at least in or about 2020, in violation of Title 18, United States Code, Section 1956(h)." See D.E. 70 at 2; ECF No. 12-1 at 2. Asante's plea was entered pursuant to a written plea agreement with the Government, dated February 15, 2022. ECF No. 12-1. In that plea agreement, the parties agreed to a Stipulated Guidelines Range of 121 to 151 months' imprisonment. Id. at 4. Additionally, Asante agreed that he "w[ould] not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under [Section] 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 121 to 151 months' imprisonment." Id. at 5.

2

On May 18, 2022, Judge Rakoff sentenced Asante to a term of 108 months' imprisonment and three years of supervised release. D.E. 114 at 1-3. The Court also ordered that Asante pay a total of $2,292,486.71 in restitution and forfeit his interest in a 2021 Mercedes Benz GLE AMG 53 and $647,488 in U.S. currency. Id. at 6-7.

On June 29, 2022, Asante filed a Notice of Appeal, *pro se*. D.E. 121. After Asante was appointed counsel, he moved to withdraw the appeal on October 3, 2022, which the Second Circuit granted the next day. ECF No. 12-2; D.E. 124.

## B. **Instant Petition**

On February 9, 2023, Asante filed the instant Petition pursuant to Section 2255 (ECF No. 1), supplemented by a memorandum filed on February 10, 2023 (ECF No. 3). Asante asserts claims of ineffective assistance of counsel, involving both of his attorneys—Bryan, who represented Asante for the pretrial phase of the case, and de Castro, who represented Asante during the pretrial, sentencing, and post-sentencing phases of the case. See ECF No. 3 at 11-30.

This action was referred to the undersigned for a report and recommendation on August 9, 2023. ECF No. 5. De Castro submitted a sworn declaration responding to Asante's claims on January 2, 2024. D.E. 142. On January 31, 2024, Respondent (the "Government") submitted its memorandum of law in opposition to Asante's Petition (see D.E. 144[3]), and on March 19, 2024, Asante submitted a reply brief in further support of the Petition (see ECF No. 15).

Asante raises several grounds for his ineffective assistance of counsel claim: (1) his counsel failed to conduct a "reasonable independent pretrial investigation," including an investigation concerning the money Asante allegedly laundered (ECF No. 3 at 14-18); (2) his

---

[3] The Government later filed the same opposition on the docket for the instant action on February 29, 2024. See ECF No. 12.

counsel failed to communicate with him, including informing him of the circumstances and likely consequences of pleading guilty (id. at 12-14, 20); (3) his counsel failed to file substantive pretrial motions (id. at 11); (4) his counsel failed to negotiate a more favorable plea agreement (id. at 18-19); (5) his counsel failed to discuss and explain the Presentence Report ("PSR"), and did not file substantive objections to the PSR (id. at 23-26); (6) his counsel failed to object to the sentence as "being substantively unreasonable" and argue for mitigation (id. at 23, 26-27); and (7) his counsel failed to file a notice of appeal despite knowing that Asante wanted to appeal (id. at 28-29).

## LEGAL STANDARDS

### A. Habeas Relief Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a convicted person held in federal custody may petition the sentencing court to vacate, set aside, or correct his sentence. See United States v. Addonizio, 442 U.S. 178, 185-86 (1979). In order to bring a federal habeas petition, the petitioner must be in custody at the time the petition is filed. See 28 U.S.C. § 2255(a). Although a *pro se* habeas petitioner is entitled to have his allegations liberally construed, see Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), a properly filed petition under Section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack, see 28 U.S.C. § 2255. Collateral relief is available only for a constitutional error "that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." FNU LNU v. United States, No. 12-CV-7897 (RJS), 2015 WL 5893723, at *4 (S.D.N.Y. Oct. 7, 2015) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). As the Second Circuit has

explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255—a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place—are 'well known and basic to our adversary system of justice.'" Bokun, 73 F.3d at 12 (quoting Addonizio, 442 U.S. at 184 & n.11).

### B. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. Habeas petitions that assert ineffective assistance of counsel claims are analyzed under the clearly established federal law standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. These claims are analyzed using the two-prong test set forth in Strickland, which places the burden on the petitioner to "(1) demonstrate his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (citation and internal quotation marks omitted); see Santone v. Fischer, 689 F.3d 138, 154 (2d Cir. 2012).

Under the first Strickland prong, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (citation and

internal quotation marks omitted); Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011). Because ineffective assistance of counsel claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . the Strickland standard must be applied with scrupulous care." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 689-90). In evaluating counsel's effectiveness, a court must assess the case from the viewpoint of the attorney at the time of the challenged conduct or omission. See Lockhart v. Fretwell, 506 U.S. 364, 371-72 (1993); Parisi v. United States, 529 F.3d 134, 141 (2d Cir. 2008).

In light of this standard, "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). This standard is intentionally high because ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . [and d]ecisions by criminal defense counsel are often choices among bad alternatives." Yick Man Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010); see Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). In this regard, a court must "bear[ ] in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689) (alteration omitted).

If the petitioner satisfies the first Strickland prong, he then must "affirmatively prove" he was prejudiced as a result of his counsel's ineffectiveness. Strickland, 466 U.S. at 692-93. To establish prejudice, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

6

Raysor, 647 F.3d at 495 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. This is because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. It is not sufficient for the petitioner to show that an error had a "conceivable effect" on the outcome of the trial, as "virtually every act or omission of counsel would meet that test." Id. at 693.

An ineffective assistance of counsel claim may be raised for the first time in a Section 2255 motion "whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003); Yick Man Mui, 614 F.3d at 54; Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012). In fact, "in most cases" a Section 2255 motion is "preferable to direct appeal for deciding claims of ineffective assistance." United States v. Kimber, 777 F.3d 553, 562 (2d Cir. 2015) (quoting Massaro, 538 U.S. at 504) (alteration removed). However, ineffective assistance claims may be procedurally barred if they were raised and considered on direct appeal. Yick Man Mui, 614 F.3d at 53-55; United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009).

C. **Waiver**

A petitioner may waive the right to bring a petition pursuant to Section 2255 in a plea agreement. See, e.g., Cavounis v. United States, No. 12-CR-297 (VEC), 2015 WL 4522826, at *3 (S.D.N.Y. July 24, 2015) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)). To that end, "[i]t is black letter law that a defendant generally cannot bring a § 2255 petition when, as here, he has waived his right to appeal or collaterally attack his sentence in his plea agreement." Bonaparte v. United States, No. 19-CR-862 (VEC), 2023 WL

7

8643780, at *2 (S.D.N.Y. Dec. 14, 2023). Additionally, to the extent a petitioner's ineffective assistance of counsel claim merely challenges the sentence imposed, such claims are also barred by a waiver of the right to appeal or collaterally attack his sentence. See Cavounis, 2015 WL 4522826, at *3; see also United States v. Garcia, 166 F.3d 519, 522 (2d Cir.1999) ("Despite his effort to dress up his claim as a violation of the Sixth Amendment, defendant in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government[.]") (citations and internal alteration omitted).

The waiver of the right to appeal or bring a motion to vacate under Section 2255 "is enforceable as long as the petitioner's waiver is knowing and voluntary." Tsastsin v. United States, No. 18-CV-5975 (LAK) (GWG), 2019 WL 4266186, at *7 (S.D.N.Y. Sept. 10, 2019) (citing Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002), cert. denied, 537 U.S. 1146 (2003)). The Second Circuit has held that a waiver of the right to challenge a sentence through an appeal or collateral attack is presumptively enforceable. United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010). A petitioner may rebut this presumption of enforceability by "showing that 'the waiver was not made knowingly, voluntarily, and competently,' that the sentence was 'imposed based on constitutionally impermissible factors,' that 'the government breached the plea agreement,' or that 'the sentencing court failed to enunciate any rationale for the defendant's sentence.'" Garcia v. United States, No. 10-CR-367 (KBF), 2013 WL 6153202, at *4 (S.D.N.Y. Nov. 22, 2013) (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

Moreover, such a waiver may bar a claim of ineffective assistance of counsel related to a defendant's sentence brought in a Section 2255 petition. See Favia v. United States, No. 01-CV-

8

6385 (DGT), 2007 WL 2071861, at *4 (E.D.N.Y. July 17, 2007) (concluding that "[petitioner]'s claims of ineffective assistance of counsel raised in the present § 2255 motion are procedurally barred" because petitioner "knowingly and voluntarily agreed to waive the right to challenge his sentence" via a plea agreement); Cavounis, 2015 WL 4522826, at *4 (quoting Panah v. United States, No. 02-CR-147S, 2006 WL 2056728, at *4 (W.D.N.Y. July 21, 2006)) ("In the context of a challenge to a sentence, a waiver agreement is fully enforceable even where ineffective assistance of counsel is claimed."); cf. United States v. Martinez, No. 9-CR-1022 (KMK), 2014 WL 7146846, at *6 (S.D.N.Y. Dec. 12, 2014) (quoting Abramo v. United States, No. 12-CV-1803 (JSR) (HBP), 2014 WL 1171735, at *10 (S.D.N.Y. Mar. 19, 2014)) ("[A] claim of ineffective assistance that is unrelated to the plea bargaining process does not provide a basis upon which to invalidate a waiver of the right to challenge the conviction by appeal or by a Section 2255 proceeding."). Indeed, courts in this District have "refused to allow a *habeas* petitioner to use a § 2255 motion to 'sidestep' a plea agreement in which he had waived his right to appeal a sentence falling within or below the stipulated range." Cavounis, 2015 WL 4522826, at *3 (quoting Pena v. United States, 201 F. Supp. 2d 231, 235-36 (S.D.N.Y. 2002)).

### D. Timeliness of Petition

Claims raised under Section 2255 are subject to a one-year statute of limitations. See 28 U.S.C. § 2255(f). That time starts to run as soon as the conviction becomes final, although it can be extended when government action prevents the movant from making a habeas motion. See id. "For the purposes of Section 2255, 'a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction,' which is 90 days after the Court of Appeals' determination." Garavito-Garcia v. United States, No. 17-CV-5798 (JSR) (SLC), 2019 WL 6884858, at *2 (S.D.N.Y. Nov. 13,

9

2019), adopted by, No. 12-CR-839-1 (JSR), 2019 WL 6878346 (S.D.N.Y. Dec. 17, 2019) (quoting Clay v. United States, 537 U.S. 522, 525-26 (2003)).

## DISCUSSION

### A.  Timeliness of Petition

Asante's Section 2255 Petition is timely, and the Government makes no argument to the contrary. Asante entered a guilty plea on February 16, 2022, and he was sentenced on May 18, 2022. See D.E. 70 at 2; D.E. 114. He filed an appeal on June 29, 2022 (D.E. 121), and the Second Circuit granted his motion to withdraw that appeal on October 4, 2022 (D.E. 124).

The law is clear that, "where no review is sought, the final date of the conviction is ten business days from the entry of the judgment of conviction, which is the deadline for filing a notice of appeal[.]" German v. United States, 209 F. Supp. 2d 288, 291 (S.D.N.Y. 2002); Fed. R. App. P. 4(b)(1); see also Valencia v. Brown, No. 08-CV-298 (KMK), 2010 WL 8358087, at *6 (S.D.N.Y. Oct. 25, 2010), adopted by, 2012 WL 310952 (S.D.N.Y. Feb. 1, 2012) ("Final judgment in a criminal case means sentence. The sentence is the judgment.") (citation omitted). "If the defendant pursues a direct appeal, his 'judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.'" Lumiere v. United States, No. 16-CR-483 (JSR), 2022 WL 866365, at *12 (S.D.N.Y. Jan. 18, 2022), adopted by, 2022 WL 861832 (S.D.N.Y. Mar. 23, 2022) (quoting Clay, 537 U.S. at 525). But if, as here, the defendant "files an appeal but does not pursue it, his conviction becomes final when the appeal is withdrawn or dismissed." See id. Accordingly, Asante's conviction became final on October 4, 2022, when the Second Circuit granted his motion to withdraw his appeal. See Rosario v. United States, 625 F. Supp. 2d 123, 127 (S.D.N.Y. 2008) ("[T]he one-year statute of limitations began . . . when the Circuit granted Petitioner's

10

motion to withdraw his appeal and his conviction therefore became final."); see also Caro v. United States, No. 01-CR-945 (RMB), 2009 WL 3273847, at *3 (S.D.N.Y. Oct. 14, 2009) ("It is plain that the latest possible date that [petitioner's] conviction became final is the date on which the mandate issued from the Second Circuit dismissing his appeal[.]").

Because claims raised in a Section 2255 motion must be brought within one year from the date on which the judgment of conviction becomes final (see 28 U.S.C. § 2255(f)), Asante had until October 4, 2023 to file a Section 2255 motion. He filed his motion on February 9, 2023 (ECF No. 1), and it is therefore timely.

**B.** **Asante Waived the Right to Bring a Section 2255 Collateral Challenge to his Sentence.**

In his Petition, Asante claims that counsel failed to object to the sentence on the grounds that it was "substantively unreasonable." ECF No. 3 at 23, 26-27. More specifically, Asante points to the "unwarranted sentencing disparities" between his sentence and that of his co-defendants and he argues that a reasonably competent counsel would have raised an objection. Id. at 26-27. Asante, however, waived his right to bring an ineffective-assistance claim related to his sentence.

"[A] defendant may not appeal or collaterally attack a sentence that is within the range in a plea agreement after knowingly and voluntarily waiving such a right and after securing the benefits of the plea agreement from the Government." Scott v. United States, No. 12-CV-6121 (GBD), 2013 WL 772826, at *3 (S.D.N.Y. Feb. 25, 2013) (citing United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993)). The limited exceptions to such a waiver include if "(1) the waiver was not knowing, voluntary, and competent; (2) the sentence imposed was based on impermissible factors, such as race or other biases; (3) the Government breached the plea agreement; or (4) the sentencing court failed to enunciate a rationale for the sentence." Nicholson

11

v. United States, 566 F. Supp. 2d 300, 303 (S.D.N.Y. 2008) (citation omitted). Asante received a sentence below the stipulated Guidelines Range in the plea agreement. Compare ECF No. 12-1 at 4 (plea agreement stating that "the defendant's stipulated Guidelines range is 121 to 151 months' imprisonment") with D.E. 114 at 2 (judgment listing sentence of 108 months' imprisonment).

Further, none of the recognized exceptions to waiver apply here. Asante does not argue that his sentence was based on impermissible factors, such as race or other bias. He also does not contend that the Government failed to fulfill its obligations under the plea agreement. Finally, Asante does not argue that the sentencing court failed to articulate a rationale for the sentence imposed. Rather, Asante avers that his waiver was not knowing and voluntary, because de Castro "push[ed]" him to accept a plea, advised him that he would "only receive somewhere [from] 48 to 50 months," and, because de Castro failed to do an adequate investigation, Asante was not "properly informed of the relevant circumstances and likely consequences of pleading guilty[.]" ECF No. 3 at 13, 16-17. These contentions are belied by the record.

Asante signed a written plea agreement, which explicitly outlined the parties' agreed-to Guidelines Sentencing Range of 121 to 151 months' imprisonment and also stated that Asante was waiving his right to appeal and collaterally challenge his sentence if he received a sentence within or below that range. ECF No. 12-1 at 4-5; see also Espinal v. United States, No. 08-CV-7029 (TPG), 2011 WL 5120663, at *4 (S.D.N.Y. Oct. 28, 2011) ("It is well established that a petitioner may not use a § 2255 motion to sidestep a plea agreement that stipulates a defendant will waive his right to appeal the merits of a sentence that falls within or below a stipulated range.") (internal quotation marks and citation omitted). During the plea allocution, Asante affirmed that he had read the plea agreement, discussed it with his lawyer, understood its terms, and signed it to indicate his agreement to its terms. D.E. 81 at 9. The Court explained to Asante

12

that even though the plea agreement stipulated to a range of 121 to 151 months' imprisonment, the Court could sentence him "to more or less or anywhere in between[ ] [a]nd regardless of where [the Court] come[s] out, if [Asante] plead[s] guilty, you will still be bound by [the] sentence," and Asante affirmed that he understood. Id. at 10. Later in the proceeding, the Court also confirmed that Asante understood that under the plea agreement, if Asante were to be sentenced to 151 months or less, "[Asante] w[ould] not appeal or otherwise attack the sentence." Id. at 16.

Moreover, Asante's responses to the Court's questions during the plea allocution plainly demonstrate that he knowingly and voluntarily waived his right to challenge the within-Guidelines sentence he received. See United States v. Shi Hui Sun, No. 09-CR-778 (KBF), 2013 WL 1947282, at *3 (S.D.N.Y. May 8, 2013) (denying Section 2255 petition alleging ineffective assistance of counsel and explaining that "[petitioner]'s statements at his plea allocution, in combination with the Plea Agreement itself, provide ample basis for the Court to find that his waiver of the right to challenge his sentence was knowing and voluntary"). The Court detailed the rights Asante would be giving up by pleading guilty, including all the rights he would have at trial, and also explained that if he were to be convicted after trial, he would have the right to appeal that conviction. D.E. 81 at 6-7. Asante confirmed that he understood that by pleading guilty, he would be "giving up each and every one of those rights," which included the right to appeal any conviction. See id. at 7. The record is thus clear that Asante understood his sentencing exposure when he entered his guilty plea, understood the rights that he was giving up by pleading guilty, and knowingly and voluntarily agreed to plead guilty. See Cavounis, 2015 WL 4522826, at *3 (concluding that petitioner entered into a plea agreement knowingly and

voluntarily and "understood the consequences of the waiver," based on petitioner signing the plea agreement and his responses to the magistrate judge's questions at his plea allocution).

Asante nevertheless argues that "the mere fact that [he] affirmed his understanding of the sentencing guidelines during allocution does not necessarily negate the possibility of ineffective assistance of counsel" because he "felt pressured or misled into accepting the plea deal, despite his understanding of the legal ramifications." ECF No. 15 at 8. However, the Second Circuit has held that a district court is "entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [the stipulated range], and had been made no promises except those contained in the plea agreement." United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001); see also United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (explaining that a defendant's sworn testimony at his plea allocation "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"); United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (per curiam), cert. denied, 531 U.S. 1001 (2000) (rejecting defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy).

In short, Asante knowingly and voluntarily waived his right to collaterally attack his sentence, and any claim attempting to do so now is procedurally barred. See Warren v. United States, No. 10-CV-4114 (SJF), 2012 WL 3861231, at *5-6 (E.D.N.Y. Aug. 30, 2012) (concluding that petitioner's ineffective assistance of counsel claims collaterally attacking his

convictions or sentence "[we]re all clearly barred by the waiver [in petitioner's plea agreement]"); Tsastsin, 2019 WL 4266186, at *7 ("With respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g., sentencing), however, the waiver remains enforceable.") (citation omitted); cf. Castellanos v. United States, No. 2-CR-1314 (SAS), 2008 WL 4548916, at *5 (S.D.N.Y. Oct. 8, 2008) (explaining that it is "well established that claims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea agreement") (cleaned up).

## C. Asante's Ineffective Assistance of Counsel Claims

All of Asante's claims of ineffective assistance of counsel fail to satisfy the high bar set by Strickland. See Scott, 2013 WL 772826, at *3 (S.D.N.Y. Feb. 25, 2013) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)) ("The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."). As discussed below, Asante fails to show that Bryan's or de Castro's conduct fell below an objective standard of reasonableness. I therefore do not reach the second prong of Strickland which addresses whether Asante was prejudiced by his counsel's conduct. See Choullam v. United States, No. 05-CR-523 (LTS), 2011 WL 3962601, at *2 (S.D.N.Y. Sept. 6, 2011) (citing Jameson v. Coughlin, 22 F.3d 427, 430 (2d Cir. 1994)) ("When a petitioner fails to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, courts need not reach the second prong of the test.").

1.   Asante's claims concerning counsel's pretrial investigation[4]

In the pretrial phase, Asante contends that counsel was ineffective because he (1) failed to communicate properly, (2) failed to file substantive pretrial motions, and (3) failed to conduct an adequate and independent pretrial investigation. Beginning with counsel's alleged failure to communicate, Asante contends that "[t]here was not any reasonable communication from the beginning of this case between Asante and his attorneys, so that he could effectively participate in his defense." ECF No. 3 at 13. He appears to assert this claim against both attorneys, Bryan and de Castro. See, e.g., id. at 15.

To be sure, "[a]n attorney has a duty 'to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution,' Strickland, 466 U.S. at 688, but there is no minimum number of meetings that counsel must hold with a client to meet that obligation." Santos v. Artus, No. 08-CV-5087 (PAE) (FM), 2013 WL 1981574, at *24 (S.D.N.Y. May 14, 2013), adopted by, 2013 WL 2458464 (S.D.N.Y. June 3, 2013); United States v. Carrano, 340 F. Supp. 3d 388, 399 (S.D.N.Y. 2018) (quoting Rodriguez v. Uhler, No. 15-CV-5075 (JPO), 2017 WL 354180, at *11 (S.D.N.Y. Jan. 24, 2017)) ("[T]he Constitution has imposed 'no set rule for the number of times counsel must meet with a defendant.'"). And here, the record demonstrates that Bryan and de Castro adequately communicated with Asante.

As Asante acknowledges, Bryan met with him to discuss the case for three hours and later corresponded with him via phone. ECF No. 3 at 12-13. Asante also states that once de Castro was appointed counsel, de Castro spoke with Asante over the phone (rather than in person

---

[4] Asante's claims are grouped together based on the phase of the case to which they relate.

because of the COVID-19 pandemic) and "communicate[d] with [Asante's] family regarding his case status." Id. at 14. Asante even admits that, with regard to de Castro, "the number of visits is not in question in this case." Id. Additionally, in his sworn affidavit, de Castro states that in his "126 days of representing Mr. Asante, we had 16 meetings or calls with him, lasting approximately 19 hours" and "approximately 10 meetings or calls with [Asante's] family, lasting approximately 29.1 hours." D.E. 142 at ¶¶ 20-21. De Castro further notes that Asante often communicated with his defense team through his family members. Id. at ¶ 21.

Further, it is reasonable for an attorney to meet with his client over the phone instead of in-person, especially when in-person visits are not possible. United States v. Pena, No. 18-CR-640 (RA), 2020 WL 1674007, at *1 (S.D.N.Y. Apr. 6, 2020) (concluding that defendant's right to effective assistance of counsel was not impaired by prison's suspension of in-person legal visits during COVID-19 pandemic because defendant "retain[ed] his right to speak to his counsel by phone, which is a suitable alternative at this time in light of the generally-accepted nationwide mandate against in-person meetings"); Darius v. I.N.S., No. 01-CV-8015 (AKH), 2002 WL 31119433, at *4 (S.D.N.Y. Sept. 24, 2002) (finding that petitioner was not deprived of his right to counsel where petitioner "did not show why consultations with his lawyer by telephone were not adequate and prevented counsel from functioning effectively" and "made no showing of any inability to communicate by telephone with his lawyer, nor of any refusal by his lawyer to travel to see him personally, if that proved necessary"); see also United States v. Eisenberg, No. 01-CR-210 (CM), 2002 WL 483468, at *3 (S.D.N.Y. Mar. 8, 2002) (explaining that "[t]he fact that an attorney communicates with his client by telephone does not suggest that he is any less attentive to his client's case th[a]n an attorney who meets with his client in person").

Next, Asante argues that counsel failed to file pretrial motions. ECF No. 3 at 2, 11. But Asante does not identify a specific motion his counsel should have filed, stating only that Bryan "failed to file specific motions that could have potentially benefited [Asante's] case" and "may have overlooked potentially beneficial motions in Asante's case." See ECF No. 15 at 6. Even if the failure to file a pretrial motion, by itself, could establish ineffective assistance of counsel, Asante makes only a conclusory and unsupported assertion. Such a vague assertion is insufficient to demonstrate that his counsel's conduct was objectively unreasonable. See Smalls v. McGinnis, No. 04-CV-301 (AJP), 2004 WL 1774578, at *23 n.41 (S.D.N.Y. Aug. 10, 2004) (quoting Vasquez v. United States, 96-CV-2104 (PKL), 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)) ("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, . . . '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel . . . .") (alteration in original); Hayes v. Tracy, No. 03-CV-5237 (SLT), 2005 WL 486912, at *5-6 (E.D.N.Y. Jan. 11, 2005) (concluding that "[p]etitioner has not shown that counsel's decision not to file pre-trial motions was unreasonable" where petitioner could not identify how failure to file motions to suppress, a motion to controvert the eavesdropping warrant, and a motion for severance disadvantaged him); Mohamed v. Portuondo, No. 97-CV-3735 (JBW), 2004 WL 884072, at *9 (E.D.N.Y. Mar. 11, 2004), aff'd by, 131 F. App'x 318 (2d Cir. 2005) (observing that "[t]he failure to make a particular pretrial motion does not, by itself, establish ineffective assistance of trial counsel"); cf. United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990) ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying

18

motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed.") (citation omitted).

Finally, Asante contends that counsel failed to conduct an adequate and independent pretrial investigation. ECF No. 3 at 14-18. Specifically, Asante argues that counsel failed to investigate the amount of money allegedly laundered. Id. at 16-17. According to Asante, counsel could have "challenged the correct amount of money" for which Asante was held accountable, and the failure to do so resulted in Asante receiving a longer sentence. Id. at 17.

It is well-established that the duty to investigate "requires counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 691). However, this duty does not "compel defense counsel to investigate comprehensively every lead or possible defense or to scour the globe on the off-chance something will turn up." Id. at 321 (internal quotation marks and citations omitted). Further, "[w]here allegations of ineffective assistance are conclusory and give no indication as to what exculpatory evidence may have been revealed by an investigation, a Sixth Amendment ineffective assistance claim based on failure to investigate is doomed." Petrucelli v. United States, No. 02-CR-99 (TPG), 2009 WL 4858081, at *10 (S.D.N.Y. Dec. 15, 2009).

Here, Asante's conclusory and vague assertions that counsel failed to undertake an adequate pretrial investigation are contradicted by the record and Asante's own admissions. Bryan and Asante discussed Asante's case for three hours. ECF No. 3 at 13. Asante also admits that de Castro "showed Asante 40 pages of text messages which the government ha[d] formatted together" and "read[ ] the government's case file and discuss[ed] it with the government prosecutor." Id. at 15. In a sworn affidavit, de Castro explains that before accepting the plea

agreement, "the defense team thoroughly reviewed [Asante's] discovery, as well as an unsolicited letter that Mr. Asante sent to the government admitting to his offense conduct." D.E. 142 at ¶ 17. The record thus demonstrates that de Castro had an opportunity to assess the strength of the Government's case and therefore the decision not to pursue other avenues of investigation was likely a reasonable strategic decision by counsel. See Romero v. United States, No. 15-CV-6512 (LAP), 2017 WL 4516819, at *5 (S.D.N.Y. Sept. 21, 2017) (quoting Greiner, 417 F.3d at 321) (explaining that "[a] decision by trial counsel not to undertake [a pretrial] investigation does not overcome the strong presumption that counsel's conduct was reasonable: 'when there is reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable'"); McBride v. Coveny, No. 19-CV-200 (RA), 2020 WL 4194895, at *8 (S.D.N.Y. July 21, 2020) ("Whether counsel should have taken certain investigatory steps and presented particular evidence are strategic decisions for which substantial deference is given."); Alston v. United States, No. 15-CR-435 (CM), 2021 WL 2380064, at *7 (S.D.N.Y. June 10, 2021) (finding that counsel was not deficient for failing to hire a private investigator where "[petitioner] offer[ed] no reason to think that further pretrial investigation would have produced any different result, and why it was not a reasonable strategic decision for counsel not to hire a private investigator").

Additionally, during his plea allocution, Asante affirmed that he was "satisfied with [his] representation," "had a full opportunity to discuss these matters with [his] lawyer" and that Asante "told her everything [he] know[s] about these matters." D.E. 81 at 5. Asante's lawyer also informed the Court at the plea allocution that they were not aware of any valid defense that

20

would likely prevail at trial or any other reason why Asante should not plead guilty.[5] Id. at 11. As the record demonstrates, that representation was made with adequate knowledge of the facts surrounding the charged conduct.

Consequently, each of Asante's claims regarding counsel's ineffectiveness during the pretrial phase fail.

    2.   Asante's claims concerning counsel's conduct during the plea phase

Asante next argues that counsel was ineffective during the plea phase for failing to negotiate a more favorable plea deal and because he wrongly informed Asante that he would receive a sentence of between 48 to 50 months. ECF No. 3 at 15-16. This claim is without merit and contradicted by the record.

As it concerns the failure to negotiate a more favorable plea deal, Asante's argument ignores that criminal defendants have no right to a plea deal. See Missouri v. Frye, 566 U.S. 134, 148-49 (2012); see also D'Alessandro v. Fischer, No. 01-CV- 2551 (LTS) (DF), 2005 WL 3159674, at *20 (S.D.N.Y. Nov. 28, 2005) ("[T]his Court has held that an attorney's failure to pursue a plea bargain does not necessarily constitute ineffective assistance."). Indeed, the Second Circuit "has repeatedly rejected ineffective assistance claims where . . . the petitioner in retrospect finds fault with the plea negotiated by counsel." Khawar v. United States, No. 10-CR-01082 (TPG), 2016 WL 6270732, at *4 (S.D.N.Y. Oct. 26, 2016) (quoting Albanese v. United States, 415 F. Supp. 2d 244, 250 (S.D.N.Y. 2005)) (alteration in original). All that an attorney is required to do in the plea-negotiation context is "communicate to the defendant the terms of the

---

[5] Valerie Gotlib, Esq., another attorney at de Castro's law firm, stood in for de Castro at the plea allocution. D.E. 81 at 2. Gotlib was a member of Asante's defense team, alongside de Castro. See D.E. 142 at ¶¶ 2, 16-17. By order dated May 18, 2022, the Court appointed her as associate counsel for Asante, *nunc pro tunc* to December 20, 2021. Id. at ¶ 2.

plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Naranjo v. United States, No. 13-CR-351 (JSR) (SLC), 2019 WL 7568186, at *9 (S.D.N.Y. Dec. 16, 2019), adopted by, 2020 WL 174072 (S.D.N.Y. Jan. 13, 2020) (quoting Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000)) (alteration in original).

Further, the record demonstrates that counsel was constitutionally effective. As an initial matter, Asante acknowledges that de Castro informed him, prior to the plea, that he "could not expect a sentence [at trial] less than the time he would receive should he plead guilty." ECF No. 3 at 13. At his plea allocution, Asante reiterated that no one had promised him a specific sentence. D.E. 81 at 10; D.E. 142 at ¶ 25. Moreover, de Castro and the other members of Asante's defense team "spoke with Mr. Asante and/or members of his family many times about the potential consequences of going to trial and the potential consequences of taking a plea," between December 10, 2021, and February 16, 2022. D.E. 142 at ¶ 18. Counsel also repeatedly explained to Asante that "[they] could not predict what sentence [Asante] would receive, that the sentence he would receive was up to the Court, and [counsel] discussed what sentence [they] would request from the Court." Id. at ¶ 25. After these discussions with counsel, Asante informed his counsel that he wanted to accept the plea. Id. at ¶ 19.

Additionally, counsel did obtain a more favorable plea for Asante. Between August 4, 2021, and August 19, 2021, Bryan negotiated with the Government to reduce Asante's Guidelines Range from a range of 135 to 168 months to a lower range of 121 to 151 months. Compare ECF No. 12-4 at 5 (original plea offer from the Government) with ECF No. 12-5 at 6 (revised plea offer from the Government); see also ECF No. 12-1 (final signed plea agreement materially identical to ECF No. 12-5). As de Castro explains, Bryan negotiated Asante's

22

"leadership enhancement downward from 4 points to 3 points." D.E. 142 at ¶ 14. And de Castro further attests that "[t]he plea offer extended to Mr. Asante was the government's best and final offer," and it was the plea deal ultimately accepted by Asante. Id.

Finally, Asante's argument that he was misinformed by counsel of his sentencing exposure, and was told that he could expect a sentence of between 48 to 50 months is belied by the record of the plea allocution. During his plea allocution, Asante affirmed that he had "gone over the [sentencing] guidelines with [his] lawyer." D.E. 81 at 9. Asante further confirmed that he understood that the plea agreement "stipulated to a guideline range of 121 to 151 months in prison," and that he could be sentenced to "anywhere in between" those ranges. Id. at 10. Additionally, Asante affirmed that he understood "that if anyone ha[d] made any kind of promise or prediction or estimate" as to the length of his sentence, "that person could be wrong and, nevertheless, if [he] plead[s] guilty, [he] will still be bound" by his plea and sentence. Id. In short, Asante's own statements demonstrate that Asante did not understand that he would receive a sentence of no more than 50 months. And the Court "was entitled to rely upon [Asante's] sworn statements, made in open court . . . that he understood the consequences of his plea . . . and had been made no promises except those contained in the plea agreement." Hernandez, 242 F.3d at 112-13. Regardless, even if Asante was under a mistaken understanding about the length of the sentence he would receive, the Second Circuit has held that "a defendant [is] not entitled to withdraw a guilty plea simply because his attorney erroneously predicted sentence," even when the defendant "characterize[es] a mistaken prediction as ineffective assistance of counsel." United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989).

At bottom, Asante fails to demonstrate how Bryan or de Castro's actions concerning Asante's plea fell below an objective standard of reasonableness. See Naranjo, 2019 WL

23

7568186, at *9 (quoting Purdy, 208 F.3d at 45) (explaining that "[d]efense counsel's decision 'as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness'").

       3.  <u>Asante's claims concerning counsel's conduct during sentencing</u>

Asante also argues that counsel was ineffective for (1) failing to review and discuss the PSR with him, (2) failing to file substantive objections to the PSR, and (3) failing to make certain arguments in relation to Asante's sentence. ECF No. 3 at 23-27. Notwithstanding that these claims are barred by Asante's valid waiver in the plea agreement of his right to appeal, they all fail on the merits as well. See Brown v. United States, 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009) ("Claims of ineffective representation concerning sentencing generally do not survive the § 2255 waiver because they relate only to the performance of defendant's attorney with respect to sentencing and do not go to the validity of the plea agreement itself.") (cleaned up).

First, the record establishes that Asante's counsel did review and discuss the PSR with Asante and also did not fail to object to the PSR. The Court explained to Asante during the plea allocution that "the probation office will prepare what's called a presentence report to assist [the Court] in determining [a] sentence." D.E. 81 at 17. The Court elaborated that once the PSR was drafted, Asante and his counsel would have a chance to review it and offer suggestions, corrections, and additions. Id. That is exactly what happened here. In his sworn affidavit, de Castro explains that "[n]ot only did [the defense team] thoroughly explain the presentence interview and presentence report process to [Assante] and his family, but we prepared him for the presentence interview and thoroughly reviewed his presentence report with him." D.E. 142 at ¶ 22. Additionally, de Castro explains that over the course of three days in April and May 2022, another member of the defense team "reviewed the PSR with Mr. Asante collectively for more

than three hours." Id. at ¶ 23. Consequently, Asante's conclusory allegation that counsel "[f]ail[ed] to [p]roperly [d]iscuss and [e]xplain the PSR to [him]" is rebutted by the record. See ECF No. 3 at 23.

Moreover, and contrary to Asante's assertion that de Castro "failed to raise objections to the PSR" (id.), counsel did raise multiple fact-specific objections. Asante's counsel objected to three portions of the PSR, arguing that those portions misstated certain facts. See D.E. 112-1 at 2. Specifically, de Castro raised objections that the PSR (1) misstated which correctional facility Asante was housed at, (2) misstated Asante's actual diagnosis of "Pre-Diabetes" as "Type 2 Diabetes," and (3) misstated that "Asante believe[d] that he ha[d] a problem with marijuana and is amenable to drug treatment," when in reality Asante did not have a problem with any substances and had never addressed potential drug treatment. Id. These objections undermine Asante's claim that counsel did not review the PSR with him because it seems highly unlikely that counsel could have raised these fact-specific objections without first discussing them (and by extension, the PSR) with Asante.

Counsel also submitted a sentencing memorandum in advance of Asante's sentencing. That memorandum, as de Castro explains, argued "that the loss amount attributed to Mr. Asante accounted for more than half of his offense points, and as a result, his advisory guidelines range did not represent the severity of Mr. Asante's offense conduct." D.E. 142 at ¶ 27. Counsel also argued in the memorandum for a sentence of "36 months' imprisonment." Id. And Judge Rakoff acknowledged at sentencing that "defense counsel made many fine arguments" at the hearing. D.E. 117 at 21. Simply stated, the record undermines Asante's claim that counsel's conduct was not objectively reasonable as it concerned the PSR or Asante's sentencing. See Venkataram v. United States, No. 06-CR-102 (RPP), 2013 WL 5298461, at *8 (S.D.N.Y. Sept. 20, 2013)

25

(dismissing claim that counsel was ineffective for failing to review and object to the presentence report because "[t]he record in this case shows that [petitioner]'s attorneys did object to various parts of the presentence report, both in writing and during the sentencing proceeding" and during the sentencing hearing the attorney "stated that he had reviewed the presentence report with [petitioner], and [petitioner] did not dispute this assertion").

Second, Asante's claim that counsel was ineffective for failing to "file any kind of a motion for a downward variance [of Asante's sentence]," "object to Asante's sentence being substantively unreasonable," and "bring forward Asante's[ ] FSA Recividism [sic] Risk Assessment" also fails. ECF No. 3 at 27. At bottom, this claim is a challenge to the correctness of Asante's sentence under the Sentencing Guidelines, which is foreclosed by his waiver of appeal. See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) (rejecting ineffective-assistance claim as barred by waiver where claim "in reality is challenging the correctness of [defendant's] sentence"). But even if not foreclosed, the claim is meritless because counsel did raise various objections to Asante's Guidelines enhancements. See ECF No. 12 at 20. Indeed, despite Asante's assertions that counsel failed to challenge the Sentencing Guidelines enhancements and argue for any downward variance (ECF No. 3 at 25-28), de Castro submitted a sentencing memorandum to the Court in which he (1) argued that Asante's 18-point enhancement for the amount of money was unnecessarily harsh relative to his underlying offense, (2) argued that Asante should receive a sentence closer to the 24-month sentence received by one of his co-defendants, and (3) argued for a three-year sentence for Asante (see D.E. 112 at 5-7).

Moreover, by signing the plea agreement, Asante agreed to a Stipulated Guidelines Range of 121 to 151 months' imprisonment. See ECF No. 12-1 at 4. During the plea allocution,

the Court confirmed Asante's understanding that by signing the plea agreement, he and the Government "stipulated to a guideline range of 121 to 151 months in prison." D.E. 81 at 10. The Court further confirmed that Asante understood that if he was sentenced to 151 months or less, he "w[ould] not appeal or otherwise attack the sentence." Id. at 16. Additionally, Asante affirmed, in response to the Court's questioning, that he had "gone over the guidelines with [his] lawyer." Id. at 9. Asante thus confirmed during his plea allocution that he reviewed and agreed to be bound by the Guidelines Range as set forth in his plea agreement. Asante cannot now be heard to complain that his lawyer did not object to an agreed-to Guidelines Range. See Khawar, 2016 WL 6270732, at *5 (concluding that "[counsel] could not have been expected to object at sentencing to the loss amount in the plea agreement because the plea agreement foreclosed this possibility by providing that neither party would seek an adjustment of the stipulated Guidelines calculation"); Cruz v. United States, No. 94-CR-313 (CSH), 2000 WL 1510079, at *9 (S.D.N.Y. Oct. 10, 2000) (explaining that "because [petitioner] was sentenced within the range stipulated in his plea agreement he has waived the right to raise any claim related to his sentence, including a claim of ineffectiveness of his counsel in failing to move for a downward departure").

4.   Asante's claim concerning counsel's failure to file an appeal

Finally, Asante argues that his counsel was ineffective for failing to file a notice of appeal. ECF No. 3 at 28-30. According to Asante, he "wanted to appeal but [de] Castro discouraged him" and eventually told him that he "no longer [had] the right to appeal." Id. at 28.

The Supreme Court has explained that an attorney "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Brown v. United States, No. 17-CR-789 (PKC), 2021 WL 1222437, at *2 (S.D.N.Y. Apr. 1, 2021) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). "[W]hen

27

counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Roe, 528 U.S. at 484.

First, there is no evidence in the record that de Castro deprived Asante of his right to appeal. In his Petition, Asante never indicates that he asked de Castro to file an appeal and that de Castro *refused* to file a notice of appeal. Asante was undoubtedly aware of his right to appeal. During the plea allocation, the Court confirmed with Asante that he understood he had a right to appeal his sentence in certain circumstances. D.E. 81 at 16. In his affidavit, de Castro explains how he and Asante discussed the appellate waiver in the plea agreement following sentencing and "[Asante] did not instruct us to file a notice of appeal." D.E. 142 at ¶ 29. According to de Castro, shortly after sentencing, Asante "changed his mind and wanted to file an appeal" (id. at ¶ 30), and de Castro advised Asante that he had given "up his right to appeal any sentence 151 months or less" but noted that he "did retain the right to appeal on the ground that he was denied his right to the effective assistance of counsel" (D.E. 142-1 at 1). In response, Asante did not instruct de Castro to file an appeal, but rather stated over e-mail that he would "move on with [his] life and complete [his] 5 years left on [his] sentence." D.E. 142-1 at 2. There thus is no evidence of a refusal by de Castro to file a notice of appeal on Asante's behalf. See United States v. Hernandez-Uberia, No. 07-CR-378-03 (SHS), 2010 WL 1948586, at *2 (S.D.N.Y. May 11, 2010) ("Because this Court finds that petitioner did not in fact request counsel to file a notice of appeal, the claim that counsel was ineffective for failure to file a notice of appeal is denied.").

Additionally, even if Asante could show that he requested an appeal and his counsel failed to file a notice of appeal, Asante's ineffective-assistance claim would still fail because he is unable to show prejudice. On June 29, 2022, Asante filed an appeal *pro se*. D.E. 121. For three

28

months after filing the notice of appeal, Asante took no action. He did not attempt to make a motion and nor did he file a brief. And although Asante was appointed *pro bono* counsel on appeal, he did not attempt to file a brief or motion through that counsel. ECF No. 12-2 at 3-4. Instead, on October 3, 2022, Asante voluntarily moved to withdraw his notice of appeal, which the Second Circuit granted the next day. See id.; D.E. 124. In his Petition, Asante does not argue that his voluntary withdrawal of his notice of appeal was somehow caused by the ineffective assistance of counsel. Although prejudice is "presumed" where an attorney's error "leads to 'the forfeiture of a proceeding itself,'" United States v. Durham, 460 F. App'x 74, 74 (2d Cir. 2012) (quoting Roe, 528 U.S. at 483-84), there is no evidence suggesting that any conduct by counsel led to Asante forfeiting a valid appeal.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be **DENIED**.

**SO ORDERED.**

DATED:    New York, New York
          December 29, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jed S. Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**